[Civ. No. 16826. Fourth Dist., Div. One. Jan. 13, 1978.]

PIZZA HUT OF SAN DIEGO, INC., et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD
and BARBARA W. BAILEY, Respondents.

**COUNSEL**

Trout, Heggeness & Sweet and Terry Heggeness for Petitioners.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Millsberg, Dickstein, Kartvedt & McKee and M. O. Kartvedt for Respondents.

**OPINION**

**BROWN (Gerald), P. J.**—Pizza Hut of San Diego, Inc. (Pizza Hut) seeks annulment of a workers' compensation award on the ground the applicant's claim is barred by the one-year statute of limitations established by Labor Code section 5405.[1]

Upon reconsideration the Workers' Compensation Appeals Board (Board) rejected Pizza Hut's claim of bar for two reasons: (1) Pizza Hut had failed to prove its affirmative defense based upon the statute of limitations, and (2) Pizza Hut was estopped to assert the statute of limitations under the doctrine announced in *Reynolds* v. *Workmen's Comp. Appeals Bd.,* 12 Cal.3d 726 [117 Cal.Rptr. 79, 527 P.2d 631].

Pizza Hut filed a petition for writ of review claiming: (1) it had met its burden of proof on the issue as that burden was explained in *State of California* v. *Industrial Acc. Com.,* 195 Cal.App.2d 765 [16 Cal.Rptr. 138], and (2) for various reasons, *Reynolds* v. *Workmen's Comp. Appeals Bd.,*

---

[1]That section provides: "The period within which may be commenced proceedings for the collection of the benefits provided by Articles 2 or 3, or both, of Chapter 2 of Part 2 of this division is one year from:

"(a) The date of injury; or

"(b) The expiration of any period covered by payment under Article 3 of Chapter 2 of Part 2 of this division; or

"(c) The date of last furnishing of any benefits provided for in Article 2 of Chapter 2 of Part 2 of this division."

Statutory references are to sections of the Labor Code.

*supra,* 12 Cal.3d 726, should not apply to the facts of this case. Neither the Board nor the applicant filed an answer (Cal. Rules of Court, rule 57(b)). We issued the writ.

The Board sought and was granted leave of court to file a responsive brief addressing the issues. In its brief the Board argues, among other things, the award should be affirmed because the applicant's claim is timely under the five-year statute of limitations for "new and further disability" (Lab. Code, § 5410). Our review of the record reveals substantial evidence in support of this justification for the award, and we are satisfied the Board has acted within its powers.

On May 20, 1974, Barbara W. Bailey slipped and fell on a wet floor at the Pizza Hut restaurant where she was employed as a store manager. She sustained injury to her head and shoulder.

The accident was witnessed by a regional manager of Pizza Hut. The next day the applicant advised her immediate supervisor as well, about the injury.

Dr. Connor treated the shoulder condition in the summer of 1974, and this care was paid for in part by Kansas Blue Cross, pursuant to a group policy provided and paid for by Pizza Hut.[2]

During the 15 months between September 1974 and December 1975, Ms. Bailey saw no doctor and worked full time. In August 1975, however, her condition had begun to worsen. She used vacation time in September 1975 to stay home in bed.

In December 1975 she resumed medical treatment and, for the first time, took sick leave because of the injury. On February 4, 1976, she filed an application for adjudication of claim.

---

[2]Pizza Hut notes: "No documentary evidence such as a bill from Dr. Connor indicating payment from Kansas Blue Cross, no group insurance claim form, or any other documentary evidence was ever introduced to support the applicant's testimony that Dr. Connor's bill was paid by a policy provided by her employer." However, the applicant testified that a portion of Dr. Connor's bill was paid by Kansas Blue Cross, group insurer for Pizza Hut, and that she did not contribute to that group insurance. "As a general rule, the board *'must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached.'* " (*Lamb* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978], quoting *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 317-318 [90 Cal.Rptr. 355, 475 P.2d 451].)

Section 5410 provides in part: "Nothing in this chapter [which includes section 5405] shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability."

Hanna explains the application of this section to previously undetermined claims as follows: "Where there has been no prior award of benefits, Labor Code Section 5410, in effect, extends the period after the voluntary furnishing of benefits within which a proceeding can be instituted from one year to five years. If there has been neither a prior award nor a voluntary furnishing of benefits, Labor Code Section 5410 does not apply and the claim must be filed within one year from the date of injury under Labor Code Section 5405. In order to make Section 5410 applicable, the furnishing of benefits must be equivalent to the discharge of an obligation on account of a compensable disability. Voluntary payment of temporary or permanent disability indemnity is, of course, sufficient. *Medical treatment is also sufficient if it was furnished by an employer or authorized representative, after notice of an industrial injury, for the purpose of curing or relieving the effects of the injury.*" (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 9.03[3]; italics added.)[3]

*Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 287 [54 Cal.Rptr. 100, 419 P.2d 164], illustrates these principles. In that case an injured employee filed her first application for benefits "concededly beyond the one-year limitation period specified in Labor Code section 5405." (*Id.* at p. 290.)

The Supreme Court noted: "The rule as established by the cases is that before an employee is entitled to the advantage of the five-year period for claiming benefits for new and further disability under section 5410, he must have been furnished workmen's compensation benefits by the employer either voluntarily or pursuant to a commission award. [Citations.] The rationale of this rule is that the 'new and further disability' to which section 5410 refers is a disability in addition to that for which the employer previously provided benefits as required by the statute. The furnishing of medical treatment for an industrial injury

---

[3]Where no prior application has been filed, the jurisdiction of the Board under section 5410 is invoked by the filing of an original application. (Cal. Admin. Code, tit. 8, § 10458, subd. (a).)

constitutes such a benefit. [Citations.]" (*Id.* at pp. 290-291.) In *Standard Rectifier* the court agreed with the Board that the furnishing of pain pills by a supervisor with knowledge that they were to alleviate a condition caused by work constituted the furnishing of medical treatment. The award was affirmed as timely under section 5410.

In this matter the Board argues it has been held if an employee receives treatment for an industrial injury under a group insurance policy, the premiums for which were paid by the employer, the employee has received medical treatment benefits (*Mihesuah* v. *Workmen's Comp. Appeals Bd.*, 29 Cal.App.3d 337, 339-340 [105 Cal.Rptr. 561]). By this reasoning the payment of premiums by Pizza Hut to Kansas Blue Cross is a furnishing of benefits equivalent to a discharge of its obligation to provide medical treatment for compensable injuries under Labor Code section 4600.

In *Mihesuah,* a maintenance mechanic for Union Oil Company was badly injured in a collision while he was driving a company truck. Union had notice of the injury but "treated the injury as a nonindustrial injury and, over the next two years, applicant received extensive benefits from Union and its group policy carriers." (*Mihesuah* v. *Workmen's Comp. Appeals Bd., supra,* 29 Cal.App.3d 337, 339.) Union never informed the injured employee it had decided to treat his accident on a nonindustrial basis. The court held "[i]f petitioner's accident were employment related, there is no doubt that Union Oil Company's contributions to its group insurance policy came within the scope of section 4600, Union's partial payment of the insurance premiums, that is, accounted for payment of petitioner's medical expenses to the time of his termination." (*Id.* at p. 340.)

*Mihesuah* was distinguished by the Supreme Court in *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.,* 19 Cal.3d 329 [137 Cal.Rptr. 878, 562 P.2d 1037]. There the court noted in *Mihesuah,* "[u]nlike the instant case, . . . the employer failed to advise the injured employee of its disclaimer . . . ." (*Id.* at p. 334) and held "[t]he reasoning of *Mihesuah* is not applicable where . . . a potential claimant has been fully informed that the employer and its compensation carrier disclaim compensation liability for an employee's injury. Such notice, when given, fairly advises the recipient that formal remedies must be invoked in order to recover amounts claimed due under the Act." (*Kaiser*

*Foundation Hospitals* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d 329, 335.)

The Supreme Court did not repudiate the basic reasoning of *Mihe-suah,* but merely limited its application in cases where notice of disclaimer is given. Because such notice militates against a finding that the employer is extending voluntary benefits, the statute of limitations, the court held, "begins to run no later than the date on which such notice is given." (*Id.* at p. 335.)

Pizza Hut earnestly attempts to distinguish this case from *Mihesuah.* It notes that in *Mihesuah* the applicant's educational background (a sixth grade education) and the fact that the accident occurred on his way home would minimize his awareness that he might have been entitled to workers' compensation benefits; in contrast, Ms. Bailey should have been aware of her legal rights. Nothing in *Mihesuah* suggests the result turns on such distinctions.

In addition, Pizza Hut "surmises from *Mihesuah* that Union Oil Company, the employer in that case, was permissibly self-insured and was therefore dealing directly with the applicant . . . [whereas in this matter] [t]here is no evidence in the record to indicate that the employer . . . [or] its workers' compensation carrier have any knowledge or notice when a group medical claim for any condition is filed by a policy holder." Even if this is a difference between the cases, it relates to the employer's knowledge that an industrial injury has occurred. Here the record is replete with notice of industrial injury.

■ Since Pizza Hut had prompt notice of the industrial injury and permitted its employee to receive company-provided insurance benefits without any notice of disclaimer of liability, we conclude *Mihesuah* is controlling precedent. Here, unlike *Kaiser,* Pizza Hut took no action which would have given Bailey notice that it was not voluntarily furnishing medical benefits to relieve the effects of her industrial injury.

Such voluntary furnishing of benefits, after notice of the industrial injury, and without notice of disclaimer (see *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d 329, 334-335) permits the applicant to seek compensation "within five years after the date of injury upon the ground that the original injury has caused new and further disability." (Lab. Code, § 5410; *Standard Rectifier Corp.* v.

*Workmen's Comp. App. Bd., supra,* 65 Cal.2d 287; see *Nolan* v. *Workers' Comp. Appeals Bd.,* 70 Cal.App.3d 122 [138 Cal.Rptr. 561], mod. 70 Cal.App.3d 998c.)

"New and further disability" is not defined by statute and its meaning is not entirely clear.[4] ■ The phrase "further disability" presupposes that such disability is in addition to that disability for which proceedings were timely commenced or for which compensation already was paid (*Kauffman* v. *Industrial Accident Com.,* 37 Cal.App. 500, 502-503 [174 P. 690]). It has also been recognized "[s]ome significance must be given to the word 'new'." (See *Westvaco etc. Corp.* v. *Ind. Acc. Com.,* 136 Cal.App.2d 60, 64-68 [288 P.2d 300].) Commentators conclude:

"New and further disability can develop only after a cessation of temporary disability or an interruption of temporary disability by a period of nondisablement. A new period of temporary disability or a change to permanent disability is a new and further disability. A gradual increase in disability is a new and further disability. [Citation.] A permanent disability is a new and further disability. [Citations.] Permanent disability from the outset, however, such as loss of an eye, does not constitute new and further disability. [Citation.]

"Historically, a change in physical condition necessitating further medical treatment had been considered new and further disability whether or not accompanied by time lost from work. [Citation.]" (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 4. 21, pp. 108-109; see also 1 Hanna, *op. cit. supra,* § 9.03[2].) ■ Thus, "[c]ommonly, new and further disability refers to a recurrence of temporary disability, a new need for medical treatment, or the change of a temporary disability into a permanent disability." (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 12.12, p. 410.)

---

[4]In this regard Hanna states: "Labor Code section 5410 fails to define the term 'new and further disability,' nor has it been given a comprehensive definition by judicial interpretation. It is clear, however, that the disability must be both new and further. Ordinarily, new and further disability develops only after the cessation of the original temporary disability, and it may be either temporary or permanent in character. It is well settled that permanent disability, other than that which is permanent ab initio (i.e., from the beginning), is a new and further disability. It is equally well settled that a new and further disability does not exist, within the meaning of the law, unless the disability is one for which compensation benefits have been previously awarded or voluntarily furnished. And, finally, it is clear that whether the new and further disability occurs before or after the filing and adjudication of a claim for benefits, the controlling statutory section with respect to time limitations is Labor Code Section 5410." (1 Hanna, *op. cit. supra,* § 9.03[2].)

■ In this case, the Board states parenthetically: "all of the workers' compensation benefits awarded by the Appeals Board pertained to respondent Bailey's condition on and after December 1975, and therefore would legitimately constitute compensation for 'new and further' disability beyond that existing at the time she was treated by Dr. Connor."[5] The record supports the Board's conclusion. Between September 1974 and December 1975 the applicant neither missed time from work nor required medical attention because of the industrial injury. The deterioration of her condition, which began in August 1975, may reasonably be considered "new and further disability" which arose after a cessation of her original medical problems for which she received treatment from Dr. Connor.

We conclude the Board has not exceeded its powers.

The award is affirmed.

Cologne, J., and Staniforth, J., concurred.

---

[5]The Board awarded temporary disability indemnity and reimbursement for self-procured medical treatment, medical transportation expense, and reasonable medical-legal expense.